Filed 7/17/19

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| RUBEN NODAL,<br><br>    Plaintiff and Appellant,<br><br>v.<br><br>CAL-WEST RAIN, INC.,<br><br>    Defendant and Respondent. | 2d Civil No. B285482<br>(Super. Ct. No. CV128215)<br>(San Luis Obispo County) |

A "rogue juror" is someone who, in a mischievous way, wanders apart from fellow jurors, does not follow the court's instructions, and violates the juror's oath. (See CACI No. 100.) This undermines the integrity of trial by an impartial jury. Such a juror may not vote or influence other jurors based upon asserted expertise on a matter not in evidence at trial. This is juror misconduct which raises a presumption of prejudice. Here, it was not rebutted and we reverse.

This appeal follows a five-week trial in which appellant claimed that a steel nipple was improperly screwed into a plastic bushing on a vineyard irrigation system. The bushing failed, causing a 20-pound valve assembly to blow off a pump station pipe and strike appellant in the head. Appellant sued on a theory

of negligent design and construction.  The jury returned a 9-3 special verdict that defendant Cal West Rain, Inc. (Cal West) was not negligent.

*Facts and Procedural History*

Appellant, a vineyard foreman for Kesselring Vineyard Consulting Services (KVCS), was injured when a valve assembly blew off a vineyard irrigation pipe and hit him.  Lunacy Vineyard hired KVCS to plant and cultivate the vineyard, and Cal West designed and installed the irrigation system.  The irrigation system pumped water from a reservoir to a pump station, and from the pump station to irrigation blocks that serviced the vineyard.

Appellant claimed that the valve assembly blew off the pump station pipe because Cal West improperly joined a steel nipple with a threaded plastic bushing.  The valve assembly had a steel nipple that threaded into a two-inch plastic bushing (PVC bushing), which was connected to the pump station pipe.  Joe Garza, the Paso Robles branch manager of Cal West, oversaw the installation and trained appellant that the pump station had to be operated in automatic mode to maintain a water pressure of 100 pounds per square inch.  Operation of the irrigation system in manual mode would produce water pressure exceeding the system design.

In August of 2010, the pump station was not working. Appellant moved the power lever on the pump station from "off" to "on," opened a gray box on the control panel, and pressed the green "manual" button and the blue "auto" button.  After the pump station powered up, the valve assembly blew off the PVC bushing and hit appellant.  Appellant's expert, Ronald Bliesner, opined the valve assembly failed due to several factors, one of

which was the over tightening of the steel nipple into the threaded bushing.

After the jury returned a 9-3 special verdict for Cal West, appellant moved for new trial based on juror misconduct, and judgment notwithstanding the verdict (JNOV). The trial court found that juror misconduct occurred but did not prejudice appellant. It also ruled that the verdict was supported by substantial evidence.

*Juror Misconduct*

On review, we defer to the trial court's factual findings and independently determine whether the juror misconduct was prejudicial. (*Vomaska v. City of San Diego* (1997) 55 Cal.App.4th 905, 912.) "Juror affidavits may be used to impeach a verdict if they refer to objectively ascertainable statements, conduct, conditions or events, but not subjective reasoning processes of jurors, which are likely to have influenced the verdict improperly. [Citations.]" (*Id.* at p. 910.)

Here, the motion for new trial focused on juror Reed. He was a pipefitter for 35 years who farmed in the Central Valley. He had designed and built an irrigation system for his almond ranch. Appellant submitted four juror declarations stating that, on the first day of deliberations, the jury vote "was split between yes, no, and undecided." During deliberations, Juror Reed said he had "'been doing this for years,'" that "'[a]nybody would have put [the system] together the exact same way,'" and that "'[Cal West] installed the system like everybody in the industry does.'" "'[T]hey installed the system the way the AG industry does it, that's just how it's done.'" "'Everybody does it this way and this is industry standard.'" "'[O]nce the system was put together, and Cal West had done their testing, the ownership of the system

3

transferred to the owner of the vineyard, *and then anything that happened was the vineyard's responsibility.*'" (Italics added.)

Cal West submitted two juror declarations stating that Reed offered opinions, just as the other jurors did. In a separate declaration, Reed conclusionally denied that he was biased or told the other jurors how he was going to vote before the jury commenced deliberations. He did not refute the precise allegations of the other jurors' declarations. Two of these jurors voted for a defense verdict.

In *People v. Steele* (2002) 27 Cal.4th 1230, our Supreme Court held that "[a] fine line exists between using one's background in analyzing the evidence, which is appropriate, even inevitable, and injecting 'an opinion explicitly based on specialized information obtained from outside sources,' which we have described as [juror] misconduct. [Citation.]" (*Id.* at p. 1266.) The trial court found that Reed crossed the "'line'" described in *Steele* because Reed's remarks "introduced a fact, not in evidence, that is, how others design and use materials. No witness . . . gave evidence that he/she/it actually designed and used materials the way that Cal West . . . did in this case. This adds the fact that others routinely construct [irrigation] systems [the way] that Cal West . . . did here." The trial court found it was juror misconduct but appellant was not prejudiced because the jurors were free to draw different inferences from Reed's remarks.

We conclude that the juror misconduct raised a presumption of prejudice, which was not rebutted by Cal West. (*McDonald v. Southern Pacific Transportation Co.* (1999) 71 Cal.App.4th 256, 265 (*McDonald*).) Jurors are not permitted to inject extraneous evidence, standards of care, or defense theories

4

into the deliberations.  Reed said the Cal West design and construction met the "industry standard" and that "[a]nybody would have put [the system] together the exact same way. . . ." There was no evidence of that.  Reed vouched for the design and construction based on his expertise as a pipefitter and farmer, and said that anything that happened after the system was put together and tested "was the vineyard's responsibility."  That was contrary to the evidence and instructions.  The case was tried on a negligent design and construction theory.  It mattered not whether ownership of the irrigation system transferred to the vineyard owner after Cal West built the system.  (See Jud. Council of Cal. Civil Jury Instructions (2018) CACI 1220, p. 734; *Sanchez v. Swinerton & Walberg Co.* (1996) 47 Cal.App.4th 1461, 1466-1467 [contractor liable for injury caused by latent defect in negligent construction].)

It is settled that a juror may not "discuss an opinion explicitly based on specialized information obtained from outside sources. Such injection of external information in the form of a juror's own claim to expertise or specialized knowledge of a matter at issue is misconduct.  [Citations.]" (*In re Malone* (1996) 12 Cal.4th 935, 963-964.)  *McDonald, supra,* 71 Cal.App.4th 256 is illustrative and involved a 9-3 special verdict for defendant train company.  A juror who worked as a professional transportation consultant introduced new evidence in the nature of expert opinion during jury deliberations.  (*Id.* at pp. 263-264.) The juror talked about the placement of crossing gate sensors, their operation, and the reason why gates were not or could not be installed at the crossing.  The misconduct was "clear and severe" and "brought to bear not common knowledge but purported expert (and ex parte) rebuttal."  (*Id.* at pp. 267, 265.)

Like the "rogue juror" in *McDonald*, Reed told the jury about the industry standard, causation, and how the vineyard owner was responsible for anything that happened. He said "'I know what I'm voting no matter what.'" "[I]t can be fairly assumed that the opinions held by [this] Juror certainly influenced his vote on the first and crucial question" of whether Cal West was negligent. (*Whitlock v. Foster Wheeler, LLC* (2008) 160 Cal.App.4th 149, 163.) The juror affidavits further reflect that his statements potentially influenced the votes of as many as four other jurors. (*Ibid.*) It raised a presumption of prejudice that was not rebutted. (See, e.g., *In re Malone, supra*, 12 Cal.4th at p. 964 [prejudice analysis is different from and less tolerant than harmless-error analysis for ordinary error at trial]; *McDonald, supra*, 71 Cal.App.4th at p. 266 [same].) "When the misconduct in question supports a finding that there is a substantial likelihood that at least one juror was impermissibly influenced to the [plaintiff's] detriment, we are compelled to conclude that the integrity of the trial was undermined." (*In re Malone, supra*, at p. 964.) We accordingly reverse and remand for new trial.

*JNOV Motion*

Appellant contends the trial court erred in not granting a JNOV. On appeal, we determine whether there is any substantial evidence, contradicted or uncontradicted, supporting the jury's verdict. (*Jones & Matson v. Hall* (2007) 155 Cal.App.4th 1596, 1607.)

The evidence shows that appellant's operation of the pump station in manual mode could have caused the PVC bushing to fail. Appellant had no recollection of the incident, but Assael Barron (appellant's coworker) saw appellant press the green

6

"manual" button and the blue "auto" button on the pump station control panel.  Cal West manager, Joe Garza, stated that the start sequence would cause the pump station to run at maximum speed and produce water pressure in excess of the system design. William Bilek, the Cal West system designer, agreed that operation of the pump station in manual mode could have caused the valve assembly to break off the PVC bushing.

Appellant's expert, Bliesner, opined there were other contributing factors for the valve assembly failure but did not specifically address the issue of operator error.  Bliesner speculated that a metal reinforced PVC bushing would have prevented radial stress and cracking when the steel nipple was screwed into the bushing.  But Cal West employees Garza and Bilek stated that the bushing was not cracked and the bushing threads were not split, which would be the case if the steel nipple was over tightened.

The trial court found that appellant's case "relied completely on the jury believing" Bliesner's testimony that over tightening would cause the PVC bushing to crack and fail.  The trial court denied the motion for JNOV because the evidence showed that "the risk of over tightening was known to Cal West Rain employees and they used a technique so as not to overtighten."  Where, as here, the evidence is conflicting or if several reasonable inferences may be drawn, the motion for judgment notwithstanding the verdict should be denied.  (*Hauter v. Zogarts* (1975) 14 Cal.3d 104, 110.)

*Disposition*

The judgment is reversed.  The order denying the motion for JNOV is affirmed.  Appellant is awarded costs on appeal.

<u>CERTIFIED FOR PUBLICATION.</u>

YEGAN, J.

We concur:

GILBERT, P. J.

TANGEMAN, J.

8

Donald G. Umhofer, Judge

Superior Court County of San Luis Obispo

_____

Frederick Law Firm, Jacqueline Vitti Frederick and Sunny Hawks; Tardiff Law Offices and Neil S. Tardiff for Plaintiff and Appellant.

Hager & Dowling, Lora D. Hemphill and Thomas J. Dowling for Defendant and Respondent.