Filed 8/12/21  Wibbeler v. Kamath CA1/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| RICHARD WIBBELER, et. al.,<br><br>Plaintiffs and Respondents,<br><br>v.<br><br>NANDAN V. KAMATH, M.D., et. al.,<br><br>Defendants and Appellants. | A159347<br><br>(County of Solano<br>Super. Ct. No. FCS048266) |

In this medical malpractice action, defendants and appellants Nandan V. Kamath, M.D., and Nandan V. Kamath, M.D., a Professional Corporation (collectively "Kamath"), appeal from an order granting a new trial after the jury found Kamath was not negligent in the care and treatment of plaintiff Richard Wibbeler.  The trial court granted the new trial based upon its finding that during deliberations a juror, a registered nurse, had engaged in prejudicial misconduct by injecting external information and specialized knowledge regarding an issue key to the jury's negligence determination.  We affirm.

1

## FACTUAL AND PROCEDURAL BACKGROUND

### A.     Background

In January 2016, Kamath removed a lipoma (fatty tumor) from the upper right arm of plaintiff Richard Wibbeler ("Wibbeler"). Kamath made an incision in the posterior (rear) of Wibbeler's upper arm, removed the lipoma, sutured the incision, and bandaged the arm. Wibbeler was told to return in 17 days for his first post-surgery appointment. Wibbeler testified that, since he did not receive either verbal or written wound care instructions after the procedure, he kept the incision covered with the post-incision bandage.

Nine days later, Wibbeler was taken to a medical center by ambulance at approximately 10 a.m. The emergency room doctors initially diagnosed Wibbeler as suffering with sepsis, pneumonia, an acute kidney issue, or damage to his heart. At 1:00 p.m., Wibbeler was admitted to the medical center's ICU for treatment for pneumonia. Several hours later, at 6:00 p.m., the doctors ordered a surgical consultation to evaluate a lesion on his right arm. Wibbeler was diagnosed with a necrotizing soft tissue infection in his right arm and taken to surgery to remove the dead tissue. The surgeons first treated "a ruptured bullae" – the fluid-filled blister that had burst on Wibbeler's bicep – and found the tissue deep in the arm under the bicep had been destroyed by the infection. After stripping away the dead tissue, the surgeons "turned to the site of the previous lipoma excision." When they removed the sutures from the incision, the wound fell open and pus came out, which was then swabbed and sent to be cultured. Wibbeler's condition continued to deteriorate and the surgeons were

2

required to amputate Wibbeler's arms and legs to halt the spread of the infection.

Wibbeler and his wife filed this action, naming as defendants Nandan V. Kamath, M.D., his professional corporation Nandan V. Kamath, M.D., and his "medical corporation" Vacaville Dermatology. At trial, it was plaintiffs' position that Kamath was negligent for failing to provide Wibbeler with proper wound care instructions, as a result he had not removed the post-incision bandage from his arm, causing bacterial growth in the wound, which was a substantial factor in causing the infection that resulted in the loss of his limbs. Wibbeler's expert opined that he would not have gotten an infection had he been given proper wound care instructions and followed those instructions. Kamath contended Wibbeler received both written and verbal wound care instructions, but that wound care was irrelevant as the growth of bacteria originated in the respiratory system (not the wound) and spread throughout the body through the bloodstream.

A key evidentiary issue related to whether wound care instructions had been given to Wibbeler was whether Wibbeler was wearing a bandage over his sutured incision when he was taken to the medical center by ambulance. Each side relied, in pertinent part, on medical center records to support their position. Plaintiffs asked the jury to find that Wibbeler was wearing the post-incision bandage based on a nurse's comments in the ICU record, under the heading "Transfer Receiving Note (Nursing)": "*Dressing from home taken down, area marked by MD, non adherent dressing, 4 x 4 and occlusive dressing applied.*" (Italics in original.) Kamath asked the jury to find that Wibbeler was not wearing the post-incision bandage based on a nurse's

3

comments in the emergency room record, under the heading "Initial/Bedside Nursing Assessment": "*right upper posterior arm noted to have stitches.  Pt. reports lump removal on site.  skin tear noted on the right upper arm as well.  No dressing noted.  bruising noted on the right upper inner arm.  Right upper arm noted to be swollen, hard to touch with TTP. Bracial and radial pulses noted. CHS intact, Full ROm noted*." (Italics in original.)  While the parties questioned their experts concerning the meaning of these comments, neither party called the medical center employees who had made the actual entries.

After two days of deliberations, one juror was excused and an alternate juror was seated.  The jurors were directed to disregard their earlier deliberations and to begin anew as if those deliberations had not taken place.  After approximately three hours of deliberations, the jurors returned with a 9-3 verdict in favor of Kamath.

## B.    New Trial Proceeding

Plaintiffs filed a notice of intent to move for a new trial under Code of Civil Procedure[1] section 657 for juror misconduct.[2]  Plaintiffs alleged that one juror, a registered nurse, had committed misconduct by improperly injecting her opinions explicitly based on her specialized knowledge and experience working with doctors and in emergency rooms.

---

[1]    Undesignated statutory references are to the Code of Civil Procedure.

[2]    Although the motion for new trial was based on multiple grounds, the hearing on the motion focused on juror misconduct, which was the sole basis for the trial court's order.  On appeal, plaintiffs do not seek affirmance of the new trial order on any basis other than juror misconduct.  Accordingly, we do not address other bases for relief asserted in the motion for a new trial.

In support of the motion, plaintiffs submitted the affidavit of Juror W.R.,[3] who averred that "[s]tarting early in our deliberations and continuing throughout the process," the nurse juror "brought in her own personal experience as an RN and . . . expressed her nursing opinions to the other jurors on various issues. As an example, the nurse juror "talked about her experience as a nurse when a patient is brought into the emergency room by ambulance and how it is a chaotic situation with a lot of eyes on the patient. In this regard she . . . stated that had a bandage been on Mr. Wibbeler's arm at the time he was brought into the ER then that (the presence of a bandage) would have been documented at the time of his admission to the Emergency Department."

After hearing counsels' arguments and taking the matter under submission, the court filed its order granting the motion for a new trial. The court began by acknowledging the principle of law that "[i]t is unrealistic for jurors not to bring their backgrounds and experiences into deliberations, but they should not present new evidence." The court then held, in pertinent part, that the nurse juror's statement regarding the documentation of patient information in the emergency room record, as set forth in Juror W.R.'s declaration, was "specifically the kind . . . of specialized information that is appropriately characterized as 'purported expert rebuttal,' " and constituted prohibited juror misconduct under *Nodal v. CalWest Rain, Inc.* (2019) 37 Cal.App.5th 607.

---

[3] Pursuant to the California Rules of Court, rule 8.90, governing "Privacy in Opinions," we refer to the juror by initials.

The court also found Juror W.R.'s specific representations were more credible than the generalized denials of the nurse juror who had asserted, among other things, that she " 'never referred to or told the jury to consider any "outside" information but limited [her] comments only to the evidence presented at trial.' " The court therefore found the nurse juror had engaged in misconduct in injecting external information and specialized knowledge by her statement that, "Had a bandage been on Mr. Wibbeler's arm at the time he was brought into the ER then that (the presence of the bandage) would have been documented at the time of his admission to the Emergency Department." The court concluded the misconduct was prejudicial because "[a] key issue in the jury's determination of whether negligence occurred was whether [Kamath] gave Plaintiffs any instructions before discharging Plaintiff Richard Wibbeler from surgery."

## DISCUSSION

### I.    Applicable Law

"A verdict may be vacated, in whole or in part, on a motion for a new trial because of juror misconduct that materially affected the substantial rights of a party.  (Code Civ. Proc., § 657, subd. (2).)  A party moving for a new trial on the ground of juror misconduct must establish both that misconduct occurred and that the misconduct was prejudicial."  (*Ovando v. County of Los Angeles* (2008) 159 Cal.App.4th 42, 57.)

In ruling on a motion for a new trial based on juror misconduct the trial court " 'must undertake a three-step inquiry.  [Citation.]  First, it must determine whether the affidavits supporting the motion are admissible.  (Evid. Code, § 1150.)  If the evidence is admissible, the

6

trial court must determine whether the facts establish misconduct. [Citation.] Lastly, assuming misconduct, the trial court must determine whether the misconduct was prejudicial.' " (*Whitlock v. Foster Wheeler, LLC* (2008) 160 Cal.App.4th 149, 160, quoting *People v. Dorsey* (1995) 34 Cal.App.4th 694, 703-704.)

## II. Trial Court's Finding of Juror Misconduct

Kamath does not challenge the court's findings as to what the nurse juror said during deliberations, but contends it was not misconduct. We do not address the parties' conflicting arguments as to the standard of review concerning the trial court's misconduct finding as our conclusion remains the same. Even if we conduct an independent review of whether the facts constitute misconduct as "a legal question" (*People v. Collins* (2010) 49 Cal.4th 175, 242), as Kamath requests, we conclude the nurse juror's statement regarding the documentation of patient information in the emergency room record constitutes misconduct.

It is well settled that " '[i]t is not improper for a juror, regardless of his or her educational or employment background, to express an opinion on a technical subject, so long as the opinion is based on the evidence at trial. Jurors' views of the evidence, moreover, are necessarily informed by their life experiences, including their education and professional work. A juror, however, should not discuss an opinion explicitly based on specialized information obtained from outside sources. Such injection of external information in the form of a juror's own claim to expertise or specialized knowledge of a matter at issue is misconduct.' " (*People v. Steele* (2002) 27 Cal.4th 1230, 1265 (*Steele*), quoting *In re Malone* (1996) 12 Cal.4th 935, 963, fn. omitted.) In other

7

words, "[j]urors are not supposed to . . . communicate to fellow jurors information from sources outside the evidence presented in court. [Citation.] If they do, they are guilty of misconduct." (*Lankster v. Alpha Beta Co.* (1993) 15 Cal.App.4th 678, 682.) And, as Kamath concedes, jurors may not discuss new facts that offer other jurors "any basis for deciding the case other than the evidence and testimony presented at trial." (*People v San Nicolas* (2004) 34 Cal.4th 614, 650 (*San Nicolas*).)

In evaluating whether the nurse juror's statement constituted misconduct, the trial court appropriately considered the juror's specific statement itself and disregarded any assertion as to the juror's intent in making the statement that was inadmissible. (Evid. Code, §1150.[4]) Despite Kamath's arguments to the contrary, the nurse juror's statement regarding the documentation of patient information in the emergency room record does not indicate that it was her attempt "to make sense of the discrepant records during deliberations." Rather, the record demonstrates the nurse juror's statement actually filled an evidentiary gap as neither party produced as trial witnesses the nurses who had recorded the comments in the emergency room medical record.

Indeed, the nurse juror's statement "made to [her] fellow jurors interjected improper 'evidence' at this most critical point in the case.

_____

[4]     Evidence Code Section 1150, subd. (a) provides: "Upon an inquiry as to the validity of a verdict, any otherwise admissible evidence may be received as to statements made, or conduct, conditions, or events occurring, either within or without the jury room, of such a character as is likely to have influenced the verdict improperly. No evidence is admissible to show the effect of such statement, conduct, condition, or event upon a juror either in influencing him to assent to or dissent from the verdict or concerning the mental processes by which it was determined."

8

Had [the nurse juror's] communication been revealed in open court, evidence could possibly have been introduced" regarding the protocols to be followed in documenting patient information in the emergency room record. (*Smith v. Covell* (1980) 100 Cal.App.3d 947, 954.) "By communicating [her] 'evidence' to the jurors outside the court, [the nurse juror] precluded the plaintiffs from testing it or making an answer and thus deprived the plaintiffs of due process of law." (*Ibid.;* see *Higgins v. Los Angeles Gas & Elec. Co.* (1911) 159 Cal. 651, 656 ["[i]t is a fundamental rule that all evidence shall be taken in open court and that each party to a controversy shall have knowledge of, and thus be enabled to meet and answer, any evidence brought against him"].)

In evaluating the misconduct finding, Kamath asks to consider two decisions "to frame the analysis": (1) *Nodal v. CalWest Rain, Inc.*, *supra*, 37 Cal.App.5th 607 (*Nodal*), cited by the trial court; and (2) *San Nicolas*, *supra*, 34 Cal.4th 614. In *Nodal,* the "appeal follow[ed] a five-week trial in which [the plaintiff] claimed that a steel nipple was improperly screwed into a plastic bushing on a vineyard irrigation system. The bushing failed, causing a 20-pound valve assembly to blow off a pump station pipe and strike [the plaintiff] in the head. [The plaintiff] sued on a theory of negligent design and construction. The jury returned a nine-to-three special verdict that defendant CalWest Rain, Inc. (CalWest) was not negligent." (37 Cal.App.5th at p. 609.) The plaintiff filed a motion for a new trial, based on deliberation statements made by Juror Reed, a pipefitter with 35 years of experience, who stated that he had " ' "been doing this for years" ' "; that " ' "[a]nybody would have put [the system] together the exact same

9

way" ' "; and that the defendant " ' "installed the system like everybody in the industry does." ' " (*Id.* at p. 610.) The trial court found Juror Reed's remarks constituted misconduct as they introduced facts not in evidence but deemed them not prejudicial because the jurors could draw different inferences from his remarks. (*Id.* at p. 611.) The appellate court reversed as the juror's misconduct raised a presumption of prejudice that had not been rebutted: "Jurors are not permitted to inject extraneous evidence, standards of care, or defense theories into the deliberations. Reed said the CalWest design and construction met the 'industry standard' and that '[a]nybody would have put [the system] together the exact same way. . . .' There was no evidence of that. [The pipefitter juror] vouched for the design and construction based on his expertise as a pipefitter and farmer . . . . [Citations.] [¶] It is well settled that a juror may not 'discuss an opinion explicitly based on specialized information obtained from outside sources. Such injection of external information in the form of a juror's own claim to expertise or specialized knowledge of a matter at issue is misconduct. [Citations.]' [Citation.] [*McDonald v. Southern Pacific Transportation Co.* (1999)] 71 Cal.App.4th 256 is illustrative and involved a nine-to-three special verdict for the defendant train company. A juror who worked as a professional transportation consultant introduced new evidence in the nature of expert opinion during jury deliberations. (*Id.* at pp. 263-264.) The juror talked about the placement of crossing gate sensors, their operation and the reason why gates were not or could not be installed at the crossing. The misconduct was 'clear and severe' and 'brought to bear not common knowledge but purported expert (and ex parte) rebuttal.' (*Id.* at pp. 267, 265.) [¶] Like the 'rogue juror' in *McDonald*,

10

[the pipefitter juror] told the jury about the industry standard [and] causation, . . . . He said, ' "I know what I'm voting no matter what." ' '[I]t can be fairly assumed that the opinions held by [this] Juror certainly influenced his vote on the first and crucial question' of whether CalWest was negligent." (*Nodal, supra*, at pp. 611-612.)

In *San Nicolas*, the defendant was charged with murder of his wife and the rape and murder of his wife's 9-year-old niece. (34 Cal.4th at p. 624.) One of the major issues was whether the wife's niece was dead at the time of the rape. (*Id*. at p. 648.) A juror, who was a registered nurse, disclosed during deliberations that she was a nurse and explained a number of medical issues relating to blood pressure, circulation, " 'shunting,' " the manner in which the body would have directed the blood after the stab wounds were inflicted, and " 'provided clarification of [the pathologist's] testimony.' " (*Id*. at p. 648.) In affirming the trial court's denial of a new trial based on juror misconduct, our Supreme Court found that "the evidence presented in support of defendant's motion for a new trial [did] not show [the registered nurse] offered the jurors any basis for deciding the case other than the evidence and testimony presented at trial. No declaration suggests that she made any assertion inconsistent with the properly admitted evidence and testimony. Indeed, the remarks attributed to her . . . are consistent with the trial testimony of the pathologist, who expounded at length on the concept of blood flow, circulations, and the meaning of 'shunting.' The trial court did not abuse its discretion in ruling that [the registered nurse's] explanation of blood evidence was not misconduct." (*Id*. at p. 650.)

11

Here, the nurse juror's misconduct was closer to the facts in *Nodal* than in S*an Nicolas*. As we have noted, there was no evidence concerning the protocol for documenting patient information in the emergency room record. Thus, the nurse juror's statement "crossed the line into misconduct" by filling an evidentiary gap and offering the jurors a basis for deciding the case on additional information she had learned while working as a registered nurse in an emergency room setting – that the emergency room record would have documented the presence of a bandage on Wibbeler's arm if a bandage had been present on his arm when he was admitted in the emergency room.

In sum, although we acknowledge the "fine line . . . between using one's background in analyzing the evidence, which is appropriate, . . . and injecting 'an opinion explicitly based on specialized information from outside sources,' which . . . . [is] misconduct" (*Steele*, *supra*, 27 Cal.4th at p. 1266), we conclude under any standard of review that the trial court did not err in finding that the nurse juror's statement regarding the documentation of patient information in the emergency room record constituted misconduct. Because there is substantial evidence supporting the court's misconduct finding, we see no reason to disturb the new trial order on that basis.[5]

### III.  Trial Court's Finding of Prejudice

The parties agree, and we concur, that the trial court's prejudice finding is reviewed for an abuse of discretion. (*People v. Ault* (2004) 33 Cal.4th 1250, 1272 (*Ault*).) Kamath further contends that in evaluating for abuse of discretion, we should "review the entire record . . . to

---

[5]    In light of our determination, we do not address whether other statements attributed to the nurse juror constituted misconduct.

12

determine *independently* whether the act of misconduct, if it occurred, prevented the complaining party from having a fair trial," quoting *English v. Lin* (1994) 26 Cal.App.4th 1358 at page 1364 (italics added). However, the independent review discussed in *English v. Lin*, *supra*, at page 1364, applies only in appeals from the *denial* of a new trial motion. Since *English v. Lin* was decided, our Supreme Court has clarified that when a trial court, "after examining all the relevant circumstances," *grants* a new trial based on proven juror misconduct, the *prejudice* finding "is not subject to independent or de novo review on appeal, but may be affirmed unless it constituted an abuse of discretion." (*Ault*, *supra*, at p. 1255.)

In evaluating for an abuse of discretion, "the weight of modern California authority is that the trial court's order granting a new trial will not be disturbed if fairly debatable, even if the reviewing court itself, addressing the issues de novo, would not have found a basis for reversal. [Citations.] In particular, the traditional rule is that the reviewing court will not substitute its judgment for the trial court's determination that *error was prejudicial*, and thus warrants a new trial." (*Ault*, *supra*, 33 Cal.4th at pp. 1262-1263.)

Kamath contends the trial court erred in granting a new trial because the statement regarding the documentation of patient information in the emergency room record was "plainly reflected in the trial testimony," and did not inject anything new or inconsistent into the jury's deliberations. However, applying the deferential abuse of discretion standard, we conclude the court could properly reject those arguments. "The deference due orders *granting* new trials is commonly justified on grounds that '[t]he trial judge is familiar with the evidence,

13

witnesses and proceedings, and is therefore in the best position to determine whether, in view of all the circumstances, justice demands a retrial. . . . The presumptions on appeal are in favor of the order, and [as an appellate court we do] not independently redetermine the question whether an error was prejudicial. . . . Review is limited to the inquiry whether there was any support for the trial judge's ruling, and the order will be reversed only on a strong affirmative showing of abuse of discretion. [Citation.].' [Citations.] Moreover, [our Supreme Court has] emphasized, . . an order granting a new trial does not finally dispose of any party's rights. [Citation.]" (*Ault*, *supra*, 33 Cal.4th at p. 1261; italics in original.)

Nor do we see any merit to Kamath's contention that any prejudice was neutralized when an alternate juror was empaneled and the court instructed the jurors to disregard all prior deliberations and begin deliberations anew. Even if the nurse juror did not repeat her statement regarding the documentation of patient information in the emergency room record during the renewed deliberations, the trial court could fairly assume the statement influenced the nurse juror's decision to vote with the majority, just nine of twelve, in finding Kamath was not negligent. (*Nissan Motor Acceptance Cases* (2021) 63 Cal.App.5th 793, 822.) Because the verdict was nine to three, the trial court could find that a new trial was warranted because a different verdict may have been rendered without the misconduct. (*Ibid*.)

IV. **Public Policy Considerations**

Kamath also argues that public policy considerations mandate reversal of the new trial order because the order impinges on a juror's right to rely on her relevant past experiences and threatens the

14

integrity of the jury system by encouraging litigants to dig into the subjective reasoning processes of jurors to find how " 'specialized knowledge' " may have affected their deliberations. We disagree.

Regardless of how the Wibbelers described the conduct of the nurse juror in their motion papers, the trial court carefully focused solely on the juror's statements made during deliberations, and not her subjective reasoning process or any purported "artificial and ad hominem attacks," as Kamath suggests. Moreover, for the reasons explained above, there is substantial evidence supporting the trial court's finding that the nurse juror's statement regarding the documentation of patient information in the emergency room record was prejudicial misconduct supporting a new trial. On this record, we must reject Kamath's contention that an affirmance of the new trial court order impinges on the rights of jurors or poses a threat to the integrity of the jury system.

## V. Conclusion

In sum, we conclude Kamath has not shown error in the trial court's finding that the nurse juror committed misconduct. Nor has he shown that the court abused its discretion in ordering a new trial based on that misconduct. We therefore affirm the order granting a new trial.[6]

## DISPOSITION

The order, filed November 14, 2019, is affirmed. Plaintiffs and respondents Richard Wibbeler and Kathy Wibbeler are awarded costs on this appeal.

---

[6] In light of our determination, we do not address Kamath's other arguments.

_____
Petrou, J.

WE CONCUR:


_____
Fujisaki, Acting P.J.


_____
Chou, J.*

A159347/*Wibbeler et al., v. Kamath et al.*

_____

\* Judge of the Superior Court of San Mateo County, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.