Filed 11/29/21  Sansen v. Aerojet Rocketdyne CA3

## NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| STEVE SANSEN, | C091073 |
| Plaintiff and Respondent, | (Super. Ct. No. 34-2015-00175120) |
| v. | ORDER MODIFYING OPINION AND DENYING REHEARING |
| AEROJET ROCKETDYNE, INC., | [NO CHANGE IN JUDGMENT] |
| Defendant and Appellant. | |

THE COURT:

It is ordered that the opinion filed herein on November 4, 2021, be modified as follows:

1.  The third sentence on page 1, ending on page 2, is deleted and the following sentence is inserted in its place:

> Jurors then quickly returned a defense verdict – without further discussion and without looking at any of the exhibits introduced during trial.

1

2.  On page 19, the following paragraph is added after the paragraph constituting subsection B, entitled "Forfeiture," and immediately preceding section V, entitled "Denial of Motion for Reconsideration":

> In its petition for rehearing, Aerojet asserts that it did cite where in the record Sansen invited the jury to consider their personal experience with unions. Aerojet refers us to a portion of the opening brief containing a recitation of the facts without identifying any particular fact as supporting the assertion of invited error.  This portion of the opening brief, however, does not support the argument. "The factual portion of appellants' opening brief does contain citations to evidence.  However, such citations do not cure the failure to cite evidence in the argument section of the brief, and we will not pick and choose the portions of the brief in the statement of facts that we may think are applicable to each assertion in the argument.  [California Rules of Court,] [r]ule 8.204(a)(1)(C) is intended to enable the reviewing court to locate relevant portions of the record 'without thumbing through and rereading earlier portions of a brief.'  (*City of Lincoln* [*v. Barringer*] [(2002)] 102 Cal.App.4th [1211,] 1239, fn. 16.)  To provide record citations for alleged facts at some points in a brief, but not at others, frustrates the purpose of that rule, and courts will decline to consider any factual assertion unsupported by record citation at the point where it is asserted.  (*Ibid.*)" (*Alki Partners, LP v. DB Fund Services, LLC* (2016) 4 Cal.App.5th 574, 590, fn. 8, italics added.)  Moreover, Aerojet's argument on invited error in the opening brief does not directly tie to this portion of the statement of facts or any specific citation to the record.

There is no change in the judgment.  Appellant's petition for rehearing is denied.


FOR THE COURT:


  /s/
RAYE, P. J.


  /s/
HULL, J.


  /s/
HOCH, J.

Filed 11/4/21  Sansen v. Aerojet Rocketdyne CA3 (unmodified opinion)

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| STEVE SANSEN, | C091073 |
| Plaintiff and Respondent, | (Super. Ct. No. 34-2015-00175120) |
| v. | |
| AEROJET ROCKETDYNE, INC., | |
| Defendant and Appellant. | |

This wrongful termination of employment case was tried to a jury over the course of 10 days and culminated in a defense verdict on all five causes of action asserted by Steve Sansen against Aerojet Rocketdyne, Inc. (Aerojet).  In a motion for new trial, Sansen introduced evidence that deliberations began with three jurors proclaiming that their own experiences established that Sansen's claims had no merit because his union was not at the trial to support him.  Jurors then returned a defense verdict within 15 minutes – without further discussion and without looking at any of the exhibits

1

introduced during trial. The trial court found that at least four jurors engaged in misconduct and granted the motion for new trial. Aerojet subsequently moved for reconsideration, but the trial court determined it lacked jurisdiction to hear the motion more than 75 days after notice of entry of judgment. Aerojet appeals.

On appeal, Aerojet argues (1) the trial court erroneously relied on inadmissible evidence to find juror misconduct, (2) jurors in this case did not actually engage in misconduct, (3) Sansen was not prejudiced by the jury misconduct, (4) there was no juror misconduct because Sansen "invited jurors to draw on their union experience and is barred from benefitting from his own voluntary act," and (5) the trial court erred in denying Aerojet's motion for reconsideration.

We conclude that Aerojet has not preserved the arguments regarding inadmissible evidence or invited error. Substantial evidence supports the trial court's finding that at least four jurors engaged in misconduct by substituting their own personal experience for the evidence introduced at trial. The jury misconduct was prejudicial. And, the trial court correctly determined it lacked jurisdiction to hear Aerojet's motion for reconsideration. Accordingly, we affirm the order granting Sansen's motion for a new trial and denying Aerojet's motion for reconsideration.

## FACTUAL AND PROCEDURAL HISTORY

### *Jury Trial*

Both parties presented testimony and documentary evidence during a highly contested 10-day jury trial. During trial, Sansen presented evidence that he was a dedicated Aerojet employee who was terminated for taking time off to care for his wife and his own health when he developed serious medical issues. Sansen testified that he started working as a janitor at Aerojet at the age of 18. Over the course of almost three decades, Sansen secured promotions by working on various projects involving multiple aspects of rocket building, production of pharmaceutical drugs, cleanup of hazardous

2

materials, and refrigeration for rocket components. Sansen generally worked 48 hours per week and was available on a "moment's call" at any time during the day or night.

In January 2012, Sansen's wife was involved in an automobile accident. Sansen's wife developed major complications from her serious injuries and required surgery that was originally scheduled for December 2012. The surgery was postponed several times to June 2013. To care for his wife, Sansen used a combination of vacation days, unpaid time off, and sick leave. Aerojet disciplined Sansen for taking vacation days to care for his wife in June 2013 when she had her surgery. In December 2013, Aerojet suspended Sansen for three days on grounds that he had "missed or been late 11 times in the last rolling six months." During the disciplinary meeting, Sansen was informed by an Aerojet human resources analyst that he could apply for retroactive leave under the Family and Medical Leave Act of 1993 (29 U.S.C. § 2601 et seq.) (FMLA). Aerojet facilities manager Stephen Hill also attended the meeting. Sansen testified that Hill "seemed very disturbed by that, and as he took his hand and he hit the table and said, This is not FMLA. He's already tried that." Hill insisted, "This discipline will stick. It will not be retroactive." After returning to work from his suspension, Sansen applied for retroactive coverage for medical and family leave.

On February 13, 2014, Sansen experienced pain due to a hernia as well as symptoms of anxiety and panic related to occupational stress. He informed his supervisor and his union representative before leaving early. Later that day, Sansen received a telephone call informing him that Hill considered him to be absent without leave. To Sansen, this mirrored his experience on a day when his wife was in the intensive care unit after surgery. That day Sansen received a knock on his door from two Aerojet employees. Sansen thought they were there to console him on his wife's medical condition, but they instead told him that he was absent without leave. Sansen informed them that he had received express approval for time off. The two Aerojet employees responded, "Well, we didn't know that."

3

Although Sansen was scheduled to return on February 17, 2014, he was still experiencing stomach pain and thought he had a hernia. Sansen's wife called his supervisor at Aerojet to explain that Sansen was in too much pain to come in to work. Sansen remained off from work for several weeks. During that time he was scheduled for hernia surgery and an appointment with the psychiatric department.

In a letter dated March 13, 2014, Aerojet informed Sansen that his leave was unapproved and required medical certification. The letter stated that Sansen's absence occurred after a "series of events." In February 2014, Sansen requested sick leave to care for his wife. He tendered a note from the treating physician stating that Sansen's wife was scheduled for surgery and that this required he care for their child. Aerojet informed him that leave was not available under the FMLA to care for a healthy child. Sansen walked out on a disciplinary meeting on February 13, 2014, saying that he was feeling overwhelmed by his wife's illness and pain that might be a hernia. Sansen's wife called on his behalf, saying that he was incoherent and would not be at work that day or the next.

After February 18, 2014, Sansen failed to call in or contact his supervisor regarding his absence. Aerojet contacted Sansen on March 3, 2014, to verify whether he had sent his medical certification. During the conversation, Sansen acknowledged receiving the forms but not yet filling them out. The call was disconnected and Sansen did not pick up when Aerojet called him back. Aerojet stated that it had not received any medical documentation regarding his leave of absence. Aerojet informed Sansen that his continued failure to provide medical documentation resulted in his request for leave under the FMLA and California's Moore-Brown-Roberti Family Rights Act (CFRA) (Gov. Code, § 12945.2) being denied pending receipt of adequate medical certification. The letter admonished that if medical documentation was not received by March 18, 2014, Aerojet would consider the absence a "voluntary termination." (Underscoring omitted.)

4

At trial, Sansen's counsel elicited testimony from Aerojet employees to show that Aerojet had no record of providing him with the documents necessary to claim FMLA leave prior to February 11, 2014. Sansen explained that he was not even at work on that date. Aerojet's personnel file for Sansen contained no indication of a February 11, 2014, meeting even though the company's operating procedures required documentation of personnel meetings. Sansen testified that the first time he received a request from Aerojet for medical documentation for his FMLA leave was on March 17, 2014.

Sansen attempted to comply with the letter's demand for medical documentation but was unable to secure the documentation by the short deadline imposed in the letter. He took the letter to Kaiser, his medical provider. Kaiser stated that there was a delay in producing the documentation. Sansen testified that he "was strictly seeking leave for [his] wife and only [his] wife," and not to take care of their child. On March 18, 2014, Sansen discussed the matter on a telephone call with an Aerojet benefits analyst. Sansen detailed his efforts to get documentation. The Aerojet benefits analyst made a note that "[h]e can work on getting the medical certification completed." Sansen testified that he was told, "[Y]es, you know, I will give you some more time to complete these."

On March 20, 2014, Sansen received an express mail letter informing him that Aerojet had terminated his employment the prior day on March 19, 2014. The letter stated that Sansen had previously been asked for medical certification in a prior letter dated March 12, 2014. Sansen, however, denied ever receiving a request for medical documentation prior to March 17, 2014. A Kaiser representative testified that it could have provided a doctor's note to cover back to the time that he left the workplace on February 13, 2014.

Aerojet presented evidence on its own behalf show that Sansen concluded a disciplinary meeting with Aerojet by walking off the job, refusing to return to work for undocumented medical conditions, and refusal to confirm his claims of medical leave. Aerojet facilities manager Hill testified that he instituted a series of improvements to

operations at the company starting in October 2012. Sansen, however, resisted the changes and failed to comply with the requirements of his job. Hill informed Sansen of his frustration that Sansen would not follow the new rules or even those imposed through collective bargaining with Sansen's union. By December 2013, Sansen had engaged in a number of rule violations that "added up" to grounds for suspension.

Hill was aware that Sansen's wife needed brain surgery and had sympathy for Sansen. Hill's own wife had needed brain surgery for a tumor. Sansen's discipline was not based on his request for leave under the FMLA. To the contrary, Hill told Sansen that if his absences were based on the need to care for his wife that the leave was potentially covered under the FMLA. Hill understood that FMLA leave could be claimed retroactively.

Hill attended the disciplinary meeting with Sansen on December 9, 2013, and February 13, 2014. In addition to Hill and Sansen, John Eldeen (a steward with Sansen's union), and Myra Makelim (an Aerojet human resources employee) attended the December 9, 2013, meeting. Aerojet provided information that Sansen had been late or absent 11 times in the prior six months. During the meeting, there was a discussion of the FMLA, and how Sansen might apply retroactively for FMLA leave. Eldeen said that he would help Sansen with the FMLA claim form. Sansen brought up the issue of his wife's brain surgery. Aerojet suspended Sansen for three days without pay.

Hill further testified that he attended the February 13, 2014, disciplinary meeting but did not remember Sansen leaving before the conclusion of the meeting. Makelim testified that Sansen did not provide the required medical documentation to support his FMLA claims. She recalled a telephone conversation with Sansen in which he stated that he "was unable to provide documentation" for missed work after February 13, 2014. Sansen was terminated from employment in what was "considered a voluntary termination." Makelim summarized, "Basically that he quit."

Jurors returned a defense verdict on all causes of action.

6

### *Judgment and Posttrial Motions*

The trial court entered judgment on the jury's verdict, and Aerojet served notice of entry of judgment on August 6, 2019. Sansen moved for a new trial and for judgment notwithstanding the verdict. In support of the motion for new trial, Sansen submitted the declarations of Jurors C.B., K.B., and G.G. Juror C.B. explained that the jury entered the deliberation room, and before any voting or discussion began, Juror L.B. "strongly and with great conviction" made statements to all jurors. Juror C.B. declared that Juror L.B. then stated "that she was a union steward and had been in a union for years. She said based upon her experience and knowledge of how unions operate, if Mr. Sansen was wrongfully terminated, his union would have been at the trial supporting him. She stated that if he had a case, 'the union would have had his back,' but no one from his union showed up. She said, 'my own union would have been here showing support.' Based on her experience, and knowledge of unions [L.B.] said Mr. Sansen had no case."

Juror C.B. further recounted that "Jurors [B.H.] and [C.S.] agreed with [L.B.] and talked about their own experience and knowledge of unions in support of [L.B.'s] statements and assessment of the case based upon her experience with and knowledge of unions. [B.H.] and [C.S.] both said they also had experience with unions and knowledge of how unions operate. They both stated that if Mr. Sansen had a case his union would be supporting him, but no one from his union showed up." Juror C.B. queried, " 'what does this have to do with this case?' " But this comment received no response from other jurors.

After Jurors L.B., B.H., and C.S. made their statements about their personal experiences with how unions operate "and how the lack of union support showed Sansen did not have a case," jurors shared some cookies. Jurors "then started to quickly vote." Juror C.B. stated, "There was very little discussion regarding each of our votes. During this voting process I did not see anyone looking at the exhibits, and I did not see or hear

anyone referencing any of the jury instructions during our voting on the questions in the verdict form."

Juror K.B. submitted a declaration with a similar recount of what transpired in the deliberation room. She declared, "At the start of our approximately one hour of deliberations, [L.B.], juror number 8, forcefully declared that she had extensive experience and background with unions and was a union steward, and that unions always support an employee who loses his or her job if the termination was wrongful, and the fact that Mr. Sansen did not have union support at the trial shows that his case was not valid or strong. Two other jurors, [B.H.] and [C.S.] spoke up and told us that they agree with [L.B.] based upon their own union experience and knowledge. Both [B.H.] and [C.S.] said they agreed that since Mr. Sansen failed to have any union witness testifying in his support that his case was not valid. . . . Not much discussion followed those comments and we voted without looking at the exhibits."

Juror G.G. echoed the other two jurors' declarations. She noted that after Jurors L.B., B.H., and C.S. gave their assessments based on their own personal experiences that "we settled in, had some cookies and picked a foreperson in 5-10 minutes. We then started to quickly vote. I did not look at the exhibits, and I only saw one person briefly look at the exhibits. I did not, and I did not see anyone else, look at the jury instructions. There certainly was no discussion regarding the instructions or exhibits."

Aerojet opposed Sansen's posttrial motions. On October 18, 2019, the trial court granted the motion for new trial based on juror misconduct. The trial court found that at least four jurors decided the matter on evidence not presented at trial and that their failure to follow jury instructions constituted a separate ground of misconduct. The trial court denied the motion for new trial and for judgment notwithstanding the verdict as to Sansen's arguments that the evidence did not support the verdict.

On October 21, 2019, Aerojet moved for reconsideration of the trial court's order granting a new trial. Aerojet submitted declarations from two jurors to show that no

8

misconduct had occurred. After a hearing, the trial court denied the motion for reconsideration on grounds that the court lacked jurisdiction to grant the motion. The trial court explained that it lost jurisdiction with the passage of 75 days after the filing of the first notice of intention to move for a new trial. Aerojet thereafter timely appealed the granting of the motion for new trial and denial of the motion for reconsideration.

## DISCUSSION

### I

### *Admissibility of Evidence Showing Juror Misconduct*

Aerojet argues that the trial court committed reversible error because it erroneously considered inadmissible evidence of juror misconduct. We conclude that Aerojet has not preserved the argument for review.

### A.

### *The Trial Court Granted Aerojet's Evidentiary Objections*

In opposing the motion for a new trial based on juror misconduct, Aerojet objected to portions of the declarations submitted by Jurors C.B., K.B., and G.G. Aerojet argued these portions of the declarations that related to jurors' mental processes were inadmissible. Relating to C.B.'s declaration, Aerojet objected to his statement: "I could see from nods of heads and statements of affirmation by the other jurors that these statements by [L.B.], [B.H.,] and [C.S] impacted and were accepted by many other jurors." Aerojet also objected to C.B.'s statement: "My comment resulted in no response or sign of agreement from any of the other jurors." This comment referenced by Juror C.B. was his question to other jurors about what L.B., B.H., and C.S.'s personal experiences with unions " 'have to do with this case?' "

With respect to Juror K.B.'s declaration, Aerojet objected to her statement: "These comments and expertise influenced my decision to vote in favor of Aerojet." Juror K.B.'s statement referenced comments related to Jurors L.B., B.H., and C.S.'s personal experiences with unions.

9

Aerojet argued that the trial court should exclude the declaration of Juror G.G., where she stated: "As a result of these strong statements from these people experienced with unions I voted against Mr. Sansen." As did Jurors C.B. and K.B., Juror G.G. referred to the comments made by Jurors L.B., B.H., and C.S. about their personal experience with union representation.

The trial court *agreed* with Aerojet and therefore sustained Aerojet's objections exactly as presented in the opposition to the motion for a new trial.

**B.**
### *Aerojet Presents New Evidentiary Arguments on Appeal*

On appeal, Aerojet argues that "*most* of [Sansen's] evidence is inadmissible." (Italics added.) Specifically, Aerojet argues that the trial court should have excluded evidence regarding the jurors' review of exhibits and jury instructions, length of deliberations, timing of statements by jurors, and that L.B. spoke " 'forcefully.' " These arguments have not been preserved for appellate review because they were not first presented in the trial court.

When an argument challenges the admission of evidence, a lack of objection in the trial court is fatal to appellate review. Thus, " '[a] party desiring to preserve for appeal a challenge to the admission of evidence must comply with the provisions of Evidence Code section 353, which precludes reversal for erroneous admission of evidence unless: "There appears of record an objection to or a motion to exclude or to strike the evidence that was timely made and so stated to make clear the specific ground of the objection or motion." ' [Citation.]" (*People v. Ramos* (1997) 15 Cal.4th 1133, 1171.) Evidence Code section 353's requirement to preserve evidentiary issues by timely objections includes issues related to the relevancy of evidence. (*Faigin v. Signature Group Holdings, Inc.* (2012) 211 Cal.App.4th 726, 749.) Consequently, Aerojet has not preserved the evidentiary challenges it seeks to raise for the first time on appeal.

10

We are not persuaded by Aerojet's reliance on Evidence Code section 1150 to argue that its objection was "automatically preserved" and must be "reviewed *de novo.*" Subdivision (a) of section 1150 of the Evidence Code provides: "Upon an inquiry as to the validity of a verdict, any otherwise admissible evidence may be received as to statements made, or conduct, conditions, or events occurring, either within or without the jury room, of such a character as is likely to have influenced the verdict improperly. No evidence is admissible to show the effect of such statement, conduct, condition, or event upon a juror either in influencing him to assent to or dissent from the verdict or concerning the mental processes by which it was determined."

Evidence Code section 1150 does not help Aerojet because Aerojet could have, but did not, raise the relevancy objections to the jurors' declarations that it now seeks to challenge on appeal. Even aside from Evidence Code section 353, an argument must generally be presented in the trial court before it can be raised on appeal. " ' " 'An appellate court will ordinarily not consider procedural defects or erroneous rulings, in connection with relief sought or defenses asserted, where an objection could have been but was not presented to the [trial] court by some appropriate method . . . . The circumstances may involve such intentional acts or acquiescence as to be appropriately classified under the headings of estoppel or waiver . . . . Often, however, the explanation is simply that it is unfair to the trial judge and to the adverse party to take advantage of an error on appeal when it could easily have been corrected at the trial.' [Citation.]" [Citations.] [¶] Moreover, it would be inappropriate to allow a party not to object to an error of which the party is or should be aware, " 'thereby permitting the proceedings to go to a conclusion which he may acquiesce in, if favorable, and which he may avoid, if not.' [Citation.]" [Citation.]' " (*In re Carrie W.* (2003) 110 Cal.App.4th 746, 755.) Here, Aerojet could have presented its relevancy argument in the trial court. We conclude Aerojet has not preserved the issue for appeal.

11

## II
### *Juror Misconduct*

Aerojet argues that the trial court erred in determining that Jurors L.B., B.H., and C.S. engaged in misconduct because (1) the "trial court cited no case that supports its conclusion," (2) "jurors did not refuse to deliberate," (3) the trial court "relied on inadmissible evidence," and (4) "[t]he jurors said nothing about [Sansen's] 'union representative.'"

As to the first contention, the trial court is not required to cite authority in granting a motion for a new trial. (See Code Civ. Proc., § 660, subd. (c) [requiring only that the order be entered in the permanent minutes of the court or signed by the judge and filed with the clerk].) To the extent this contention challenges whether jurors' actions in this case constituted misconduct, we address the contention below. As to the second contention, we conclude that jurors' reliance on evidence not presented at trial constituted misconduct regardless of whether they deliberated about the evidence or not. As to the third contention, we have already rejected Aerojet's attempt to raise issues regarding admissibility of the evidence for the first time on appeal. And, as to the fourth contention, we conclude that the trial court's order granting a trial order accurately describes the evidence submitted by Sansen to show juror misconduct.

### A.
### *Trial Court Ruling*

The trial court determined that Jurors L.B., B.H., and C.S. committed misconduct by (1) interjecting new evidence based on their personal experiences rather than relying on evidence presented at trial, and (2) ignoring jury instructions requiring the jury not to consider as evidence anything seen or heard outside of court. In making this determination, the trial court rejected Aerojet's argument that Jurors L.B., B.H., and C.S. "were simply bringing their personal experience to bear as they assessed the evidence – or lack thereof."

The trial court found that "Jurors [L.B.], [B.H.,] and [C.S.] were not assessing the evidence presented at trial. Instead, they interjected *new evidence*: their purported outside knowledge of the 'fact' a union representative is always present at a trial when a plaintiff has a valid claim. The three jurors brought *new evidence to the jury deliberation not presented at trial*, stressing their expertise on union practices and forcefully stated their opinions based upon the new evidence they presented." (Second italics added.) Thus, the trial court found that "this clearly meets the standard for juror misconduct."

The trial court further determined that this consideration of facts not related to the evidence presented at trial constituted juror misconduct in the form of failure to follow the jury instructions given. As the trial court found, "The statements of jurors [L.B.], [B.H.,] and [C.S], interjecting new evidence purportedly based upon their special training and experience with unions and announcing their decision without deliberating was misconduct in violating the jury instructions."

The trial court rejected as irrelevant Aerojet's assertion that Jurors L.B., B.H., and C.S. disclosed their union backgrounds during jury voir dire. The trial court explained, "In accepting jurors with background on the issues to be presented [at trial], [Sansen] did not 'assume the risk' those jurors will violate the court's instructions and impermissibly draw on that background to interject new evidence into the deliberations."

## B.
### *Jury Misconduct*

Jurors commit misconduct when they rely on evidence not presented at trial in reaching a verdict. "A 'rogue juror' is someone who, in a mischievous way, wanders apart from fellow jurors, does not follow the court's instructions, and violates the juror's oath. (See CACI No. 100.) This undermines the integrity of trial by an impartial jury. Such a juror may not vote or influence other jurors based upon asserted expertise on a matter not in evidence at trial. This is juror misconduct which raises a presumption of prejudice." (*Nodal v. CalWest Rain, Inc*. (2019) 37 Cal.App.5th 607, 609 (*Nodal*).)

13

Thus, a juror may not " 'discuss an opinion explicitly based on specialized information obtained from outside sources.  Such injection of external information in the form of a juror's own claim to expertise or specialized knowledge of a matter at issue is misconduct.' " (*Id.* at p. 611, quoting *In re Malone* (1996) 12 Cal.4th 935, 963.)

Sharing improper information about evidence not presented at trial with other jurors constitutes juror misconduct.  (*In re Hamilton* (1999) 20 Cal.4th 273, 294.) " 'Presentation to or reception by a jury of new evidence from sources outside the trial evidence constitutes misconduct.' (*McDonald v. Southern Pacific Transportation Co.* (1999) 71 Cal.App.4th 256, 263 (*McDonald*).)  *McDonald* is instructive on the issue of misconduct.  There, the plaintiff, a brakeman at a transfer yard, was struck by a train while sitting in his truck guarding a grade crossing and sued his employer alleging it was negligent for failing to place crossing gates at the location.  (*Id.* at pp. 259-261.)  The court found juror misconduct when a juror, who was a professional transportation consultant, interjected the subject of sensors, on which there had been no evidence at trial, and commented on the feasibility of installing crossing gates during jury deliberations.  (*Id.* at pp. 262, 267.)"  (*Whitlock v. Foster Wheeler, LLC* (2008) 160 Cal.App.4th 149, 161.)

In assessing a challenge to an order granting a new trial based on jury misconduct, we accept the trial court's findings of fact when supported by substantial evidence but independently assess whether the found facts constitute jury misconduct.  (*Nodal, supra*, 37 Cal.App.5th at p. 610; *Vomaska v. City of San Diego* (1997) 55 Cal.App.4th 905, 912.)

## C.
### *Prejudicial Misconduct*

Aerojet argues that Jurors L.B., B.H., and C.S. did not commit misconduct by commenting on Sansen's failure to call a union witness because jurors are allowed to consider each party's ability to provide evidence.  Although jurors may consider a party's

ability to produce evidence, they commit misconduct when they base a verdict on evidence not introduced at trial.  (*Hansen v. Warco Steel Corp.* (1965) 237 Cal.App.2d 870, 878.)  Here, the essence of the misconduct was that jurors decided the case on a fact not in evidence, namely that unions always provide support at trial in every case in which a union employee has a meritorious claim.  Jurors L.B., B.H., and C.S. substituted the entirety of the evidence introduced at trial for their personal experiences with unions.

Jurors L.B., B.H., and C.S. compounded their misconduct by violating the trial court's instructions not to discuss with other jurors a fact not in evidence.  (*People v. Hord* (1993) 15 Cal.App.4th 711, 721, 725.)  This kind of jury "misconduct gives rise to a presumption of prejudice, which 'may be rebutted . . . by a reviewing court's determination, upon examining the entire record, that there is no substantial likelihood that the complaining party suffered actual harm.' "  (*People v. Leonard* (2007) 40 Cal.4th 1370, 1425, quoting *People v. Hardy* (1992) 2 Cal.4th 86, 174.)

On the question of prejudice, "the Supreme Court has stated that in criminal cases reversal is required '[w]hen the misconduct in question supports a finding that there is a substantial likelihood that at least one juror was impermissibly influenced to the defendant's detriment.'  (*People v. Marshall* (1990) 50 Cal.3d 907, 951; accord, *In re Malone* [(1996)] 12 Cal.4th [935,] 964.)  The test is an objective one, calling for inquiry as to whether the misconduct ' "is inherently likely to have influenced the juror." ' (*People v. Marshall, supra*, at p. 951.)  This analysis of prejudice 'is different from, and indeed less tolerant than,' normal harmless error analysis, because jury misconduct threatens the structural integrity of the trial.  (*Ibid.*)  Although stated in criminal cases, this rationale applies to civil cases as well, because civil litigants too are constitutionally entitled to a fair trial before an unbiased jury."  (*McDonald v. Southern Pacific Transportation Co.* (1999) 71 Cal.App.4th 256, 265-266.)

In a civil case, however, a showing that a single juror improperly decided a case does not constitute prejudice because a civil verdict may rest on the votes of three-

15

quarters of jurors. (*Glage v. Hawes Firearms Co.* (1990) 226 Cal.App.3d 314, 322 (*Glage*).) Thus, "in civil cases, where the court finds a 'substantial likelihood' that enough jurors were impermissibly influenced by misconduct to have affected the verdict to the detriment of the complaining party, there is 'reasonable probability of actual harm to the complaining party resulting from the misconduct.' " (*Id.* at pp. 322-323, fn. omitted.)

The trial court properly concluded that Jurors L.B., B.H., and C.S. committed misconduct by deciding the case based on their personal experiences instead of the evidence introduced at trial. These jurors' improper injection of their own personal experiences was also misconduct in that they communicated their personal experiences as facts to the other jurors. We also agree with the trial court that the misconduct was prejudicial.

The trial court found that "[t]hree jurors separately stated, based on their purported expertise with unions, [Sansen's] union had concluded there was no merit to his claims and thus he was not entitled to damages. The prejudice to [Sansen] is further supported by the fact the other jurors did not look at the exhibits or have any substantive discussion on the case beyond what jurors [L.B.], [B.H.,] and [C.S.] stated. [¶] Based on the foregoing, and in viewing the misconduct within the record as a whole, the court finds [Sansen] has established by a preponderance of the evidence acts of juror misconduct which prevent him from having a fair trial. (See *Tapia v. Barker* (1984) [1]60 Cal.App.3d 761, 765.) The court finds there is a substantial likelihood at least one juror was impermissibly influenced to [Sansen's] detriment by the misconduct of jurors [L.B.], [B.H.,] and [C.S.], and thus the integrity of the trial was undermined." Thus, the trial court made a factual finding that at least four jurors improperly relied on facts not introduced as evidence in order to decide on the verdict. Here, misconduct by four or more of the twelve jurors invokes the presumption of prejudice. (*Glage, supra,* 226 Cal.App.3d at p. 322.)

16

We are not persuaded by Aerojet's assertion that the record rebuts the presumption of prejudice. Aerojet argues that the matter is one of degree: the evidence was "weak," jurors' misconduct was not "serious," and the jurors' verdict was not likely affected by the misconduct. We reject the assertion the trial court erred in determining the jury misconduct to have been prejudicial based on the finding that " 'at least one juror' was impermissibly influenced by purported misconduct." Here, the trial court found that *at least four* jurors made their decision based on the personal experiences announced by Jurors L.B., B.H., and C.S. This finding is well supported by declarations of three jurors. Each of the three declarant jurors agreed that Jurors L.B., B.H., and C.S. expressly addressed the verdict based on facts not in evidence. The rest of the jurors then voted without deliberation or examination of any exhibits after hearing the personal experiences of Jurors L.B., B.H., and C.S. These facts support the trial court's express finding that at least four jurors improperly based their votes on the unadmitted evidence.

A decision by jurors that is based on facts not admitted at trial undermines the very essence of their duties to hear the evidence at trial and decide based on the evidence admitted at trial. (*Nodal, supra*, 37 Cal.App.5th at p. 609.) Here, at least four jurors substituted personal experiences of jurors for testimonial and documentary evidence presented at trial. This misconduct was serious and prejudicial because the verdict was based on matters the jurors were expressly instructed not to consider. The trial court properly concluded the jury misconduct was prejudicial.

## D.
### *Whether the Trial Court Made an Erroneous Finding Regarding the Lack of a Union Representative*

Aerojet argues that the trial court erred in finding that Jurors L.B., B.H., and C.S. said "that if [Sansen] had a case then 'his *union representative*' would have been at trial . . . ." (Italics added.) We agree that the declarant jurors did not use the phrase "union representative" in describing the statements of Jurors L.B., B.H., and C.S. However, the

17

trial court's findings were entirely consistent with the gist of the declarant jurors' statements and there was no error in its factual findings.

In his declaration, Juror C.B. recounted Juror L.B. as saying that "based upon her experience and knowledge of how unions operate, if Mr. Sansen was wrongfully terminated, his union would have been at the trial supporting him. She stated if he had a case, 'the union would have had his back,' but no one from his union showed up. She said, 'my own union would have been here showing support.' Based on her experience, and knowledge of unions [L.B.] said Mr. Sansen had no case." Juror K.B. added that Jurors "[B.H.] and [C.S.] said they agreed that since Mr. Sansen failed to have any union witness testifying in his support, that his case was not valid." Juror G.G. echoed that she heard Juror L.B. say that "if Mr. Sansen was wrongfully terminated then his union would have been at the trial supporting him. If he had a case, 'the union would have had his back,' but no one from his union showed up."

We recognize that "union representative" can sometimes be used as a term of art. (See *Amalgamated Transit Union, Local 276 v. San Joaquin Regional Transit Dist.* (2019) 36 Cal.App.5th 1, 7 & fn. 3.) In this case, however, the trial court appears to have meant "union representative" to refer to a person who would be sent by Sansen's union to appear at trial on his behalf. Jurors B.H. and C.S. stated that they expected a person from the union would testify on Sansen's behalf. And Juror L.B. expressed her expectation that a person from Sansen's union would have "showed up" at trial to support Sansen. The trial court's factual finding that Jurors L.B., B.H., and C.S. decided that Sansen's case had no merit for lack of a union representative is supported by the evidence. We discern no error.

## IV
### *Invited Error*

Aerojet asserts that Sansen invited the error of jury misconduct when he argued that jurors should consider their own union experiences. We reject the argument because

18

it (1) has not been preserved for appeal, and (2) has not been properly presented on appeal.

## A.
### *Failure to Preserve the Issue for Appeal*

In opposing the motion for a new trial, Aerojet did not raise the issue of invited error. Instead, Aerojet raises the issue for the first time on appeal. Aerojet offers no reason why it could not have presented its argument regarding invited error in the trial court. For failure to present the issue in the trial court in the first instance, Aerojet has not preserved the issue for appeal. (*In re Carrie W.*, *supra*, 110 Cal.App.4th at p. 755.)

## B.
### *Forfeiture*

The issue of invited error is also not properly presented in Aerojet's opening brief. Aerojet asserts that Sansen "invited jurors to draw on their union experience," but does not offer any citations to the record in support of the assertion. We are not required to search the transcript of a 10-day trial to ascertain whether Aerojet's assertions are borne out by the reporter's transcript. " ' "It is the duty of a party to support the arguments in its briefs by appropriate reference to the record, which includes providing exact page citations." ' (*Duarte v. Chino Community Hospital* (1999) 72 Cal.App.4th 849, 856.) Because '[t]here is no duty on this court to search the record for evidence' (*Belli v. Curtis Pub. Co.* (1972) 25 Cal.App.3d 384, 394, fn. 5), an appellate court may disregard any factual contention not supported by a proper citation to the record (*Board of Administration v. Wilson* (1997) 52 Cal.App.4th 1109, 1154; *Kim v. Sumitomo Bank* (1993) 17 Cal.App.4th 974, 979)." (*Grant-Burton v. Covenant Care, Inc.* (2002) 99 Cal.App.4th 1361, 1379.) Thus, the issue of invited error is deemed forfeited.

## V
### *Denial of Motion for Reconsideration*

Aerojet argues that the trial court erred in denying the motion for reconsideration on grounds that the court lost jurisdiction more than 75 days after the first notice of entry

19

of judgment. In so arguing, Aerojet acknowledges that *Jones v. Sieve* (1988) 203 Cal.App.3d 359 (*Jones*) compels a different result. Aerojet urges us to conclude that *Jones* was wrongly decided. We agree with the reasoning of *Jones* and affirm the trial court's denial of Aerojet's motion for reconsideration.

## A.
### *Timing*

On August 6, 2019, Aerojet served notice of entry of judgment on Sansen. That same day, Sansen filed his motion for a new trial. The trial court granted the motion for a new trial on October 18, 2019. Aerojet filed a motion for reconsideration of the order granting a new trial on October 21, 2019, which was 76 days after Aerojet filed its notice of entry of judgment. The trial court denied the motion for reconsideration on grounds that it lacked jurisdiction to hear Aerojet's motion.

## B.
### *Limitations Period of 75 Days*

Code of Civil Procedure section 660, subdivision (c), provides that – with an exception not applicable here – "the power of the court to rule on a motion for a new trial shall expire . . . 75 days after service on the moving party by any party of written notice of entry of judgment, . . . or if that notice has not been given, 75 days after the filing of the first notice of intention to move for a new trial." The limitation period in section 660 "is mandatory and jurisdictional." (*Jones, supra,* 203 Cal.App.3d at p. 369, citing *Siegal v. Superior Court* (1968) 68 Cal.2d 97, 101 (*Siegal*).) The *Jones* court noted that our "Supreme Court held [in *Siegal*] that 'an order made after the 60-day[1] period purporting to rule on a motion for new trial is in excess of the court's jurisdiction and void.' "

---

**1** At the time of decision in *Jones*, Code of Civil Procedure section 660 provided for a 60-day limitations period. (*Jones, supra,* 203 Cal.App.3d at p. 369.) Section 660 has been amended to extend the 60-day limitations period to the current 75 days. (Stats. 2018, ch. 317, § 1.)

(*Jones,* at p. 369.) The *Jones* court further explained that "the statute which provides for a motion to reconsider ([Code Civ. Proc., ]§ 1008) does not, itself, limit the time within which the court must make its new order after granting reconsideration. Therefore, if a trial court could reconsider a motion for new trial after the expiration of the 60-day limitation mandated by section 660, the purpose and effect of section 660 would be nullified and the power of the court to rule on a motion for a new trial would be extended indefinitely." (*Id.* at p. 370.)

Under the plain meaning of Code of Civil Procedure section 660, subdivision (c), the trial court in this case lost jurisdiction to rule on motion for reconsideration before Aerojet filed the motion. (*Jones, supra,* 203 Cal.App.3d at p. 369; *Siegal, supra,* 68 Cal.2d at p. 101.) Aerojet, however, urges us to reject the reasoning and result in *Jones* (and presumably *Siegal*). Aerojet reasons that the trial court's order granting a new trial " 'vacates the verdict' " so that "it also vacated the 75-day deadline tied to that judgment under [Code of Civil Procedure ]section 660[ subdivision ](c)." Essentially, Aerojet argues that the lack of a judgment resulted in a lack of any deadlines triggered by the judgment. We are not persuaded.

The correct approach is that taken by the courts in *Jones* and *Siegal* which recognized that the power to grant a motion for reconsideration without any regard for the limitations period imposed by Code of Civil Procedure section 660, subdivision (c), would allow a trial court to grant a motion for new trial at any time – no matter how long after a judgment that the motion would be made. (*Jones, supra,* 203 Cal.App.3d at p. 369; *Siegal, supra,* 68 Cal.2d at p. 101.) We adhere to the rationale of these cases and conclude that the trial court properly denied the motion for reconsideration for lack of jurisdiction.

## DISPOSITION

The order granting a new trial and the order denying the motion for reconsideration are affirmed. Sansen shall recover his costs on appeal. (Cal. Rules of Court, rule 8.278(a)(1) & (2).)

                                      /s/_____

                                        HOCH, J.

We concur:

/s/_____
RAYE, P. J.

/s/_____
HULL, J.

22